# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs December 21, 2010 at Knoxville

## MARIAM FADA DIRIE v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2004-C-2400      Monte Watkins, Judge**

**No. M2009-02287-CCA-R3-PC - Filed January 31, 2011**

The petitioner, Mariam Fada Dirie, pleaded guilty to two counts of aggravated child abuse by neglect, a Class A felony, and received concurrent sentences of 17 years' incarceration. A timely filed petition for post-conviction relief followed wherein the petitioner alleged that her guilty pleas were involuntary due to the ineffective assistance of counsel. Following the appointment of counsel, amendment of the petition, and an evidentiary hearing, the post-conviction court denied relief. On appeal, the petitioner contends that the post-conviction court erred by denying relief. Discerning no error, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J.,delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and D. KELLY THOMAS, JR., J., joined.

Ashley Preston, Nashville, Tennessee, for the appellant, Mariam Fada Dirie.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Victor S. Johnson III, District Attorney General; and Roger Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The July 2004 term of the Davidson County grand jury indicted the petitioner on two counts of aggravated child abuse causing serious bodily injury and three counts of aggravated child abuse by neglect for acts and omissions concerning her two children, M.G.

and N.G.,[1] both of whom were less than six years of age at the time of the offenses. On October 5, 2007, the petitioner pleaded guilty to two counts of aggravated child abuse by neglect in exchange for dismissal of the remaining three counts of the indictment. Pursuant to the plea agreement, the trial court imposed two concurrent sentences of 17 years' incarceration with a statutory release eligibility of 100 percent. *See* T.C.A. § 40-35-501(i)(1), (2). The guilty plea submission transcript, made an exhibit at the evidentiary hearing, reflects that the offenses involved the petitioner's failure to seek recommended and necessary medical attention for her two children.

On October 9, 2008, the petitioner timely filed a pro se petition for post-conviction relief alleging that her guilty pleas were involuntary due to the ineffective assistance of counsel.[2] On October 16, 2008, the post-conviction court entered a preliminary order appointing counsel and ordered amendment of the petition. On June 22, 2009, the petitioner, through counsel, filed an amended petition specifically alleging that trial counsel was ineffective in failing to (1) formulate a reasonable defense, (2) inform the petitioner of the consequences of her guilty pleas, (3) inform the petitioner of her constitutional rights concerning a trial and plea, (4) give sufficient advice concerning her options of a trial or plea, (5) consult with the petitioner, (6) investigate witnesses who could have provided exculpatory information concerning the offenses, and (7) discuss the evidence that the State would present against the petitioner. The amended petition alleged that these specific instances of ineffective assistance of counsel left the petitioner no choice but to plead guilty.

At the evidentiary hearing, the petitioner testified that she did not understand everything concerning the plea agreement due to her lack of knowledge of the English language at the time of her plea. She said that her attorney informed her that she was facing a 25-year sentence if convicted and that she should take the 17-year sentence offer made by the State. She denied knowing that the minimum sentence she faced was 15 years and said, "if I knew I could get fifteen I wouldn't have took the seventeen at all." She was unsure whether trial counsel had explained to her that she was actually facing 25-year sentences in each count which could be ordered to be served consecutively. She did recall, however, that trial counsel explained that she could receive up to 15 percent in good behavior credits to reduce her 100 percent release eligibility requirement. The petitioner also claimed that she was suffering from depression and on medication at the time of the guilty plea and that this

---

[1] As is the practice of this court concerning child victims, we will refer to the victims in this case by their initials.

[2] The petitioner also alleged that her convictions violated certain terms of the Vienna Convention because she, a citizen of Somalia, was not afforded consular assistance throughout the prosecution of her case. This allegation, however, was abandoned in the amended petition and at the evidentiary hearing.

impaired her ability to knowingly and voluntarily plead.

The petitioner said that trial counsel failed to discuss the evidence that the State would have presented against her. She said that her older child, M.G., suffered from autism, and she claimed that this contributed to the accusations against her. Her younger child, N.G., suffered from a congenital limb defect. The petitioner claimed that these medical conditions explained and somehow exonerated her from culpability for the offenses. She believed that had she gone to trial, she would have been acquitted of the charges.

On cross-examination, the petitioner acknowledged that, at the guilty plea hearing, the trial court explained the good time credits which may reduce her service of the sentence. She also admitted that she had in fact received good time credit and would not be serving the full 17-year sentence.

Trial counsel testified that the petitioner's previous attorney failed to give him any discovery materials, so he had to obtain all the materials from the State. Trial counsel recalled discussing the evidence, charges, and full range of punishment with the petitioner. He said that he communicated with the petitioner with the assistance of an interpreter some of the time. He recalled, however, that even when he did not use an interpreter, he "never got the impression that [the petitioner] was not understanding what [he] was telling her." Trial counsel said that the petitioner and her family members spoke English.

Trial counsel recalled the petitioner was suffering from depression at the time of the offenses and during the pendency of the proceedings. He was also aware that she was taking medication for depression. He said, however, that there was never an indication that the petitioner lacked any understanding of the proceedings.

Trial counsel testified that there was "no doubt" that the State could have proven their case had it gone to trial. He said that the petitioner "simply ignored the advice of the doctors and didn't care for her children." Trial counsel testified that the petitioner told him that in Somalia "children were just put out to play . . . . [and if] something [was] wrong with them, it would just fix itself." In light of this, trial counsel researched Somalian culture in an effort to develop a defense theory that the petitioner had cared for her children in the only way she knew.

In its order denying post-conviction relief, the post-conviction court found that trial counsel had met with the petitioner numerous times and had utilized the assistance of an interpreter. The post-conviction court also found that trial counsel had discussed all the evidence and possible defenses with the petitioner. Likewise, after interviewing witnesses and determining none were favorable to the defense, trial counsel fully discussed the

elements of the guilty plea with the petitioner. The post-conviction court noted that the plea colloquy supported trial counsel's testimony. In denying relief, it also found that the petitioner's testimony was not credible.

On appeal, the petitioner argues that trial counsel's failure to formulate a defense and to explain the nature of the evidence against her gave her no choice but to plead guilty. The State contends that the post-conviction court's denial of relief should be affirmed. We agree with the State.

The post-conviction petitioner bears the burden of proving her allegations by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

In the context of ineffective assistance of counsel that resulted in a guilty plea, the petitioner must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart,* 474 U.S. 52, 59 (1985). To do so, she must show "a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." *Id.*; *see Hicks v. State*, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998). The petitioner is not required to demonstrate that she likely would have fared better at trial than she did by pleading guilty, although evidence of this type can be persuasive that she would have insisted on her right to a jury trial. *See Hill*, 474 U.S. at 59. Should the petitioner fail to establish either deficient performance or prejudice, she is not entitled to relief. *Id.* at 697; *Goad v. State,* 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland,* 466 U.S. at 697.

Claims of ineffective assistance of counsel are mixed questions of law and fact. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

The record in this case fully supports the findings of fact and conclusions of law of the post-conviction court. The overall record belies the testimony of the petitioner

that she did not understand the guilty plea and that trial counsel performed deficiently in any manner. The guilty plea colloquy reflects that the petitioner answered the trial court's questions appropriately and asked specific questions concerning her plea agreement, indicating an overall understanding of the proceedings. Therefore, the petitioner failed to establish her entitlement to post-conviction relief. Accordingly, the order of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE