IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 23, 2017 at Knoxville

## TIMOTHY ALLEN JOHNSON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2012-B-1770     Cheryl A. Blackburn, Judge**

---

**No. M2016-01462-CCA-R3-PC- Filed March 9, 2017**

---

The petitioner, Timothy Allen Johnson, appeals the denial of post-conviction relief from his 2013 Davidson County Criminal Court jury conviction of tampering with evidence, for which he received a sentence of 12 years. In this appeal, the petitioner contends only that he was denied the effective assistance of counsel. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Jessica Van Dyke, Nashville, Tennessee, for the appellant, Timothy Allen Johnson.

Herbert H. Slatery III, Attorney General and Reporter; Robert W. Wilson, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Megan King, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Originally charged with one count each of the sale of less than .5 grams of cocaine in a drug-free school zone, tampering with evidence, and resisting arrest, the petitioner pleaded guilty to resisting arrest in exchange for a six-month sentence, and the trial court ultimately declared a mistrial as to the sale of cocaine when the jury was unable to reach a verdict.[1] A Davidson County Criminal Court jury convicted the petitioner of one count of tampering with evidence, and the trial court imposed a 12-year sentence as a persistent offender to be served concurrently to the petitioner's six-month sentence for resisting arrest. This court affirmed the convictions on direct appeal. *See*

---

[1] At a subsequent trial, the petitioner was found guilty of the sale of less than .5 grams of cocaine within a drug-free school zone. *See State v. Timothy Allen Johnson*, No. M2015-01160-CCA-R3-CD (Tenn. Crim. App., Nashville, June 15, 2016).

*State v. Timothy Allen Johnson*, No. M2014-00766-CCA-R3-CD (Tenn. Crim. App., Nashville, Mar. 2, 2015).

In *Timothy Allen Johnson*, this court stated that the "case arose out of an incident where the [petitioner] agreed to obtain crack cocaine for two undercover police officers to purchase." *Id.*, slip op. at 1.

> Detective Michael Donaldson testified that on the evening of March 27, 2012, he and his partner, Detective Brittany Shoesmith, were participating in a "buy-bust" operation. In a "buy-bust" operation, undercover detectives pose as drug users to purchase a controlled substance from a target. Once the purchase is complete, a "takedown team" immediately arrests the seller. The members of the takedown team wear "clearly marked raid gear" identifying themselves as police officers, and they move into position to arrest the seller after receiving a "takedown signal" from the undercover officers. On the evening of the incident, Detectives Donaldson and Shoesmith were playing the role of drug purchasers. In order to maintain their cover, the detectives were in an unmarked vehicle that did not have police lights or sirens.

*Id.*, slip op. at 1-2. After the undercover detectives encountered the petitioner and asked him for drugs, the petitioner eventually managed to procure "'a bag of crack' that appeared to be an eighth of an ounce." *Id.*, slip op. at 2, 3. The drug transaction took place in the detectives' unmarked car. *Id.* Detective Donaldson observed that the "drugs were in a corner portion of a ziploc baggie that had been torn away from the main bag." *Id.*, slip op. at 3.

> When Detective Donaldson remarked that the amount seemed like "a lot for a thirty[,]" the [petitioner] responded that not all of the drugs were for Detective Donaldson. The [petitioner] opened the bag and gave Detective Donaldson thirty dollars worth of crack cocaine. Detective Donaldson secured the drugs by placing them into an ashtray, and Detective Shoesmith continued to drive. Detective Donaldson then gave the "takedown" signal.
>
> An officer on the takedown team pulled in front of the vehicle and activated his blue lights. Detective Donaldson heard the [petitioner] say, "[I]t's the vice, it's the vice."

Detective Donaldson turned toward the backseat and witnessed the [petitioner] placing both the plastic bag and its contents into his mouth in an attempt to ingest the remaining amount of drugs. Detective Donaldson began to wrestle with the [petitioner] to prevent him from consuming the drugs as the takedown team was running toward the vehicle. The takedown team wore "raid gear that sa[id] police all over the front of it and all over the back of it." The [petitioner] fought with the officers who attempted to remove him from the vehicle, and officers had to forcibly subdue and handcuff the [petitioner]. Before the takedown team was able to secure the [petitioner], he was able to consume or ingest the remaining drugs.

*Id.*, slip op. at 3.

On July 15, 2015, the petitioner filed, pro se, a timely petition for post-conviction relief, alleging, *inter alia*, that he was deprived of the effective assistance of counsel. Following the appointment of counsel and the amendment of the petition, the post-conviction court conducted an evidentiary hearing on March 30, 2016.

At the evidentiary hearing, trial counsel testified that he had practiced law for eight years and that, in April 2013, approximately 90 percent of his practice was devoted to criminal defense. Trial counsel stated that he had replaced the petitioner's previous attorney, having been appointed to represent the petitioner in late 2012 when the case was already pending. Trial counsel recalled meeting with the petitioner "five or six times" between November 2012 and the April 2013 trial.

Trial counsel testified that he had discussed with the petitioner his "several prior convictions" and how those prior convictions "would impact his sentencing." Trial counsel stated that, to the best of his recollection, the State had offered to remove the school zone from the drug charge but that the parties could never "come to a place that we could satisfactorily have an agreement." Trial counsel recalled cautioning the petitioner that "it was a risk to go to trial." Although counsel "felt confident in [his] ability to raise a defense on the drug charge," he was "less confident on the tampering offense."

With respect to the petitioner's claim that counsel failed to pursue the defense of entrapment, counsel testified that he did not "feel that the facts support[ed] an entrapment defense." When questioned about his failure to request a jury instruction on entrapment, counsel explained that he would have needed to give prior notice and that he

chose not to because he did not believe that entrapment "would have been an effective defense." Trial counsel also stated that he did not pursue a claim that the sentence imposed was "overly punitive" because, due to the petitioner's prior convictions, his sentencing options were "pretty limited." Trial counsel argued in favor of alternative sentencing, but the trial court failed to grant his request.

With this evidence, the post-conviction court denied relief, finding that the petitioner "failed to show a prima facie case for an entrapment defense." Noting that the petitioner had chosen not to call any witnesses but had instead simply relied on his cross-examination of trial counsel, the post-conviction court found that counsel's "testimony contradicted rather than support[ed] any of [p]etitioner's claims."

> Specifically, [t]rial [c]ounsel testified that in his professional legal opinion . . . the facts in [p]etitioner's case did not support an entrapment defense; thus, no basis existed to assert the defense, file notice of the defense, or request the jury be instructed as to entrapment – particularly as to the entrapment [sic] charge (Count 2), the subject of [p]etitioner's post-conviction challenge; . . . [and p]etitioner's sentencing options were limited due to his prior criminal history, which qualified him as a Range III offender; thus, counsel argued for alternative sentencing.

The court specifically credited trial counsel's testimony and found that "[n]othing in the record . . . suggest[ed] that [t]rial [c]ounsel's performance was deficient." In addition, the court specifically found that the petitioner's failure to testify at the evidentiary hearing prevented him from presenting "any factual grounds to support the claims that only he could testify to such as his claim that he was not kept informed about his case." The post-conviction court ultimately concluded that the petitioner had "failed to carry his burden of establishing by clear and convincing evidence" that trial counsel "was ineffective or that [p]etitioner suffered prejudice from any alleged deficiency."

In this appeal, the petitioner reiterates his claim of ineffective assistance of counsel, claiming that trial counsel performed deficiently by failing to pursue the defense of entrapment and by failing to argue that the sentence imposed was "overly punitive." The State contends that the court did not err by denying relief.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-

conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citing *Strickland*, 466 U.S. at 689), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted). We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

A claim of ineffective assistance of counsel is a mixed question of law and fact. *Kendrick*, 454 S.W.3d at 457; *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of

law are given no presumption of correctness. *Kendrick*, 454 S.W.3d at 457; *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

In our view, the record fully supports the ruling of the post-conviction court. Trial counsel testified – and the trial court explicitly accredited his testimony – that the facts of the petitioner's case did not support an entrapment defense and that such a defense would have been ineffective, particularly with respect to the charge of evidence tampering. Regarding sentencing, trial counsel testified that his options were limited due to the petitioner's extensive criminal history, although counsel did argue, albeit unsuccessfully, in favor of alternative sentencing. We will not second-guess these reasonable trial strategies and tactical decisions. *See Adkins*, 911 S.W.2d at 347. Furthermore, given the substantial evidence against the petitioner, he cannot establish that, but for counsel's alleged errors, the outcome would have differed. *See Strickland*, 466 U.S. at 694. As such, we hold the petitioner has failed to prove by clear and convincing evidence any facts that demonstrate that trial counsel's representation was deficient or prejudicial.

The petitioner failed to establish that he was denied the effective assistance of counsel at trial. Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE