FILED

04/13/2021

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 18, 2021

**ANTONIO SMITH v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Knox County**
**No. 114113     Steve Sword, Judge**

_____

**No. E2020-00601-CCA-R3-PC**

_____

The petitioner, Antonio Smith, appeals the denial of his petition for post-conviction relief, which petition challenged his 2016 Knox County Criminal Court Jury convictions of the sale of heroin in a school zone, the possession with intent to sell or deliver heroin in a school zone, possession of marijuana, and the possession of a firearm with the intent to go armed during the commission of a dangerous felony. He argues that he was deprived of the effective assistance of counsel. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Clinton E. Frazier, Maryville, Tennessee, for the appellant, Antonio Smith.

Herbert H. Slatery III, Attorney General and Reporter; Ronald L. Coleman, Assistant Attorney General; Charme P. Allen, District Attorney General; and TaKisha Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Knox County Grand Jury charged the petitioner

> with one count of [the] sale of heroin in a drug-free zone, one count of delivery of heroin in a drug-free zone, three counts of possession of heroin with the intent to sell in a drug-free zone, three counts of possession of heroin with the intent to deliver in a drug[-]free zone, one count of possession of marijuana, two counts of possession of a firearm with the intent to go

armed during the commission of a dangerous felony, two counts of felon in possession of a firearm with intent to go armed during the commission of a dangerous felony, three counts of felon in possession of a firearm, and four counts of criminal gang enhancement.

*State v. Antonio Smith*, No. E2016-02130-CCA-R3-CD, slip op. at 1 (Tenn. Crim. App. Knoxville, Jan. 30, 2018), *perm. app. denied* (Tenn. Apr. 18, 2018). The trial court dismissed the gang enhancements prior to trial, and the jury acquitted the petitioner of being a felon in possession of a firearm with the intent to go armed during the commission of a dangerous felony. *See id.* The jury convicted the petitioner as charged of the remaining offenses, and, following a merger of several offenses, the trial court imposed a total effective sentence of 72 years' incarceration. *See id.* This court affirmed the convictions and sentences on direct appeal. The petitioner's convictions arose from the controlled purchases of heroin and a traffic stop conducted of a vehicle in which the petitioner was a passenger. In our analysis of the sufficiency of the convicting evidence, we summarized the proof of the petitioner's guilt:

> When the CI arrived at the apartment, she placed the prerecorded buy money on the coffee table. Codefendant Montgomery appeared to be attempting to get in touch with someone on her phone via text message. Shortly after the CI arrived, a man came into the apartment. Codefendant Montgomery took the money the CI had placed on the table and went into another room with [the petitioner] for a short period of time. When they exited the bedroom, [the petitioner] left the apartment. Codefendant Montgomery handed the heroin to the CI. When [the petitioner] was apprehended shortly thereafter, he was in possession of a twenty dollar bill and a ten dollar bill with serial numbers that matched those of bills given to the CI by police. The heroin purchased by the CI was in the same type of packaging as the heroin found on [the petitioner's] person. Codefendant Montgomery's apartment was within 1000 feet of a city park. The vehicle in which [the petitioner] was riding passed within 1000 feet of an elementary school while he was being followed by police prior to the traffic stop. Moreover, [the petitioner] told police that he sold heroin and had never met his supplier.

The petitioner filed a timely petition for post-conviction relief on October 25, 2018, alleging several instances of ineffective assistance of counsel. Following the

appointment of counsel, the petitioner filed an amended petition for post-conviction relief, adding claims that counsel performed deficiently by failing to seek a severance from the petitioner's co-defendant as well as a free-standing claim that the joint trial violated principles of due process.

At the evidentiary hearing conducted on February 27 and March 5, 2020, trial counsel testified that he was appointed to represent the petitioner in criminal court on what he described as "very serious felony offenses." Trial counsel retained the services of a private investigator to assist in the investigation. In the petitioner's case, trial counsel moved to suppress all the evidence, including the petitioner's statement, flowing from the traffic stop on grounds that the stop was unconstitutional.[1] The private investigator obtained and reviewed the police radio traffic "from foxtrot channel" at the time of the traffic stop and summarized it in a memorandum to trial counsel. In that memorandum, the investigator indicated that the radio traffic suggested that the basis of the stop was the petitioner's having a cracked windshield. At the suppression hearing, Knoxville Police Department ("KPD") Lieutenant Tony Willis, the officer who conducted the traffic stop, testified that the basis of the stop was the petitioner's running a stop sign.[2] Trial counsel acknowledged that he did not use the information from the investigator's memorandum to cross-examine the officer. He could not recall whether his failure to utilize the information was inadvertent or intentional.

Trial counsel testified that he moved to sever the petitioner's trial from that of the co-defendant but admitted that the motion was not timely. He stated that although the trial court "was always very fair with defense counsel," the court "became much more strict about" motion deadlines "in order to make our trial calendar more efficient." Trial counsel recalled that the joinder issue was important to the petitioner. He said that "the crux of the whole trial was do we want [the co-defendant] there, do we not want her there?" Trial counsel explained that, because the defense strategy was to argue that the petitioner possessed the drugs for personal use and not for resale, he thought that it would "help to have somebody sitting there who he used drugs with."

Trial counsel acknowledged that the jury, in the bifurcated proceeding, acquitted the petitioner of having the prior felony convictions necessary to support his

---

[1]     The motion sought suppression of "a Glock .45 caliber pistol, [11] small bags of marijuana, seven small bags of heroin, and [30] dollars of prerecorded money which were seized during a traffic stop and subsequent search of [the petitioner]'s person." *Id.*, slip op. at 2.

[2]     Lieutenant Willis testified that "officers who were conducting surveillance on a controlled drug purchase" told him that the petitioner "was seen leaving the apartment of codefendant Montgomery and getting into the passenger side of a red and silver Ford Explorer." *Id.* Lieutenant Willis located and followed the vehicle and enlisted a marked patrol car to stop the vehicle after he "saw the vehicle '[d]isregarding a stop sign.'" *Id.*

conviction of being a felon in possession of a firearm with the intent to go armed during the commission of a dangerous felony.

During cross-examination, trial counsel testified that his practice was devoted exclusively to criminal defense, with the majority of his cases involving "[g]uns and drugs." Before becoming an attorney, counsel ran a successful real estate business and worked for the election commission. Trial counsel described his trial strategy in the petitioner's case:

> That the CI was a liar and that the whole investigation was misguided by the police and that [the petitioner] was going to a party, not a drug deal. And that he was partying with [the co-defendant]. They were using drugs together, not selling drugs . . . or he wasn't selling drugs to them.

He said that he "was so fired up about this trial." Trial counsel recalled that he had a good working relationship with Lieutenant Willis, who "was always accessible when I needed to speak with him."

The petitioner did not testify at the evidentiary hearing.[3]

At the conclusion of the hearing, the post-conviction court took the petition under advisement. In a written order denying relief, the post-conviction court found that, although trial counsel probably should have questioned Lieutenant Willis about radio chatter that suggested a pretextual reason for the traffic stop, the failure to do so was not "egregious." The court determined that the petitioner had failed to establish that he was prejudiced by the omission. Specifically, the court concluded that the petitioner failed to present any evidence at the evidentiary hearing to suggest that Lieutenant Willis' answers to any such questions would have changed the outcome of the suppression hearing. The post-conviction court also found that, although counsel failed to timely move for a severance of defendants, the petitioner was not entitled to relief because he had failed to present any proof to suggest that a timely motion to sever "would have a reasonable probability of being granted."

In this appeal, the petitioner specifically abandons his claim that appellate counsel performed deficiently but reiterates his claims that he was deprived of the effective assistance of counsel at trial, arguing that but for trial counsel's failure to adequately cross-

---

[3]     Appellate counsel testified at the hearing, but, because the petitioner has abandoned his claim of ineffective assistance of appellate counsel, we do not include his testimony or the post-conviction court's conclusions regarding those claims in this appeal.

examine Lieutenant Willis and his failure to timely move for a severance, the result of the proceedings would have been different.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citing *Strickland*, 466 U.S. at 689), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted). We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

A claim of ineffective assistance of counsel is a mixed question of law and fact. *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

In our view, the post-conviction court did not err by denying relief. Although we agree with the post-conviction court that trial counsel probably should have used the information he learned from his investigator regarding the radio chatter to cross-examine Lieutenant Willis, the petitioner failed to present any evidence that Lieutenant Willis' answers would have damaged the officer's credibility or, more importantly, that the answers would have led the trial court to grant the motion to suppress. Importantly, the petitioner did not present Lieutenant Willis as a witness at the evidentiary hearing. Additionally, the petitioner's being stopped for a cracked windshield does not preclude his also being stopped for running a stop sign. Similarly, trial counsel should have timely filed his motion to sever, but nothing in the record suggests that the trial court would have granted the motion even if it had been timely filed. Indeed, the petitioner presented no proof on this issue at all.

Accordingly, we affirm the judgment of the post-conviction court.

_____
JAMES CURWOOD WITT, JR., JUDGE